# UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF TENNESSEE
### NASHVILLE DIVISION

PATRICIA TEMPLIN, derivatively on
behalf of Brookdale Senior Living Inc.,

    Plaintiff,

v.

LUCINDA M. BAIER, T. ANDREW
SMITH, STEVEN E. SWAIN, MARCUS
E. BROMLEY, FRANK M. BUMSTEAD,
JACKIE M. CLEGG, DANIEL A.
DECKER, RITA JOHNSON-MILLS,
JEFFREY R. LEEDS, MARK J.
PARRELL, WILLIAM G. PETTY, JR.,
GUY P. SANSONE, JAMES R. SEWARD,
DENISE W. WARREN, LEE S.
WIELANSKY, VICTORIA L. FREED,
and JORDAN R. ASHER,

    Defendants,

and

BROOKDALE SENIOR LIVING INC.,
a Delaware corporation,

    Nominal Defendant.

)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)

**Case No. 3:21-cv-0373**
**Judge Aleta A. Trauger**

## <u>MEMORANDUM</u>

    The defendants have filed a Motion for Judgment on the Pleadings (Doc. No. 85), to which Patricia Templin has filed a Response (Doc. No. 88), and the defendants have filed a Reply (Doc. No. 89). For the reasons set out herein, the motion will be denied.

# I. BACKGROUND[1]

## A. Nature of this Lawsuit

Delaware law provides that "[t]he business and affairs of every corporation organized [under the laws of the state] shall be managed by or under the direction of a board of directors . . . ." Del. Code Ann. tit. 8, § 141(a). Pursuant to that rule, "[w]hether or not a corporation shall seek to enforce in the courts a cause of action for damages is, like other business questions, ordinarily a matter of internal management and is left to the discretion of the directors, in the absence of instruction by vote of the stockholders." *Daily Income Fund, Inc. v. Fox*, 464 U.S. 523, 532 (1984) (quoting *United Copper Secs. Co. v. Amalgamated Copper Co.*, 244 U.S. 261, 263 (1917)).

Delaware, however, like other states, recognizes an exception to that usual approach, whereby an independent stockholder may bring suit in the name of the corporation in which she owns a stake, if she can establish "either that the board wrongfully refused the plaintiff's pre-suit demand to initiate the suit or, if no demand was made, that such a demand would [have been] a futile gesture and is therefore excused." *White v. Panic*, 783 A.2d 543, 550 (Del. 2001) (citations omitted). Such a lawsuit, brought by an investor on behalf of a corporation without the cooperation of the corporation's board, is typically referred to as a "stockholder (or 'shareholder') derivative action."

This is a stockholder derivative action involving Brookdale Senior Living Inc. ("Brookdale"), a Delaware corporation that is "the nation's largest senior-living community operator, owning 350 communities, leasing 301 communities, managing 75 communities on behalf of third parties, and holding an equity interest in three." (Doc. No. 82 ¶ 16.) The individual defendants are current and former Brookdale executives and members of its Board of

---

[1] Unless otherwise indicated, the facts herein are taken from the Second Amended Verified Stockholder Derivative Complaint (Doc. No. 82) and are accepted as true for the purposes of the pending motion.

Directors ("Board"). (*Id.* ¶¶ 17–35.) In recent years, Brookdale has faced a number of allegations regarding (1) the quality of its services and (2) the honesty of its and its executives' representations to the public. Those allegations have resulted in several lawsuits, including this one, which asserts that the defendants breached their fiduciary duties to Brookdale by allowing the company's alleged problems to persist and by misleading the public about those problems' existence and/or severity. (*Id.* ¶¶ 79–101.)

**B. Procedural History**

The currently pending motion is, for the most part, not concerned with the substance of the aforementioned allegations, but the timing of the lawsuit. Accordingly, a recapitulation of the somewhat unique procedural history of the case is necessary.

On April 30, 2020, reporting in the *Nashville Business Journal* brought public attention to a number of issues at Brookdale-run facilities, including the company's "chronically insufficient staffing." (Doc. No. 82 ¶ 99.)

On November 11, 2020, Templin, a stockholder, sent a letter through counsel to Brookdale Chairman of the Board Guy P. Sansone, with the subject line "Re: Shareholder Demand Pursuant to Del. Ct. Ch. R. 23.1."[2] (Doc. No. 82-1 at 1.) The purpose of the letter, Templin's counsel explained, was "to demand that the Company's Board of Directors . . . take action to remedy breaches of fiduciary duties by certain current and/or former directors and executive officers of the Company," whom the letter listed. (*Id.*) On December 16, 2020, counsel for another eventual stockholder derivative plaintiff, Stefanie Anders, sent Sansone a similar letter, making largely the same demand. (Doc. No. 47-2 at 60–61.)

---

[2] Rule 23.1 of the Delaware Chancery Court Rules governs shareholder derivative actions in Delaware courts.

On March 11, 2021, Brookdale Executive Vice President, General Counsel and Secretary Chad C. White sent effectively identical letters to Templin and Anders, respectively, stating that the Board had elected to defer consideration of the demands during the pendency of an investor class action against Brookdale based on the same general allegations, *Posey v. Brookdale Senior Living Inc.*, No. 3:20-cv-00543 (M.D. Tenn.). (Doc. No. 82-2 at 1; Doc. No. 47-4 at 1.)

On May 10, 2021—with the *Posey* matter still pending—Anders filed a Verified Stockholder Derivative Complaint on behalf of Brookdale against a number of individual defendants. (Doc. No. 1 ¶¶ 348–62.) Anders asserted that the Board's "indefinite deferral" of investigating and acting on her demand threatened to "irreparably prejudice" the company and was "a violation of Delaware law." (*Id.* ¶¶ 345, 347.)

Templin filed her Verified Stockholder Derivative Complaint not long thereafter, on May 21, 2021. (*Templin v. Baier*, Case No. 3:21-cv-00407, Doc. No. 1.[3]) Like Anders, Templin alleged that the Board had "abdicated" its responsibility to investigate a litigation demand by electing, "without any investigation, to defer consideration of the Demand indefinitely." (*Id.* ¶¶ 344–45.)

On June 21, 2021, the parties filed a Joint Motion requesting that the court consolidate the Anders and Templin actions, which the court granted. (Doc. Nos. 33–34.) On August 20, 2021, Anders and Templin jointly filed a Verified Consolidated Stockholder Derivative Complaint, which repeated the previously-pleaded allegations regarding the Board's allegedly wrongful deferral of consideration of the demand letters. (Doc. No. 36 ¶¶ 337–49.)

---

[3] Citation to the separate docket is necessary for early filings related to Templin because the cases were ultimately consolidated under the docket number assigned to Anders.

4

On September 29, 2021, judgment was entered in favor of the defendants in the *Posey* matter. (*Posey*, Doc. No. 54.) As such, the original grounds on which the Board had relied to defer consideration of the Anders and Templin demands no longer existed.

On December 14, 2021, White sent a letter to counsel for Anders and Templin, acknowledging that change in circumstances. (Doc. No. 82-3.) White announced that, despite the elimination of the obstacle that the Board cited in support of its initial deferral, the Board intended to continue deferring consideration of the demand—this time, because of an entirely different lawsuit, *Davis v. Baier*, No. 3:20-cv-00929 (M.D. Tenn.), which had been pending at the time of the original demands by Anders and Templin but which Brookdale had not mentioned in its initial refusal. (*Id.* at 2.)

On January 11, 2022, the plaintiffs filed a motion seeking to amend their Verified Consolidated Stockholder Derivative Complaint, either as a matter of course pursuant to Rule 15(a)(1) of the Federal Rules of Civil Procedure or, in the alternative, with leave of the court pursuant to Rule 15(a)(2). (Doc. No. 43 at 1.) A week later, on January 18, 2022, the parties filed a Joint Stipulation, stating, among other things, that the defendants "do not oppose Plaintiffs' Motion to Amend, and instead intend to file a motion to dismiss the amended complaint once it is filed." (Doc. No. 45 at 3.) The court granted the pending motion, and the Amended Verified Consolidated Stockholder Derivative Complaint became the operative complaint. (Doc. Nos. 46–47.)

On February 22, 2022, the defendants filed their anticipated Motion to Dismiss, in which they argued that the court should dismiss the plaintiffs' derivative claims because their pleaded allegations failed to "establish that the board wrongfully refused to bring the claims asserted in the demand on the company's behalf." (Doc. No. 51 at 2.) The defendants argued that Brookdale

had never rejected the plaintiffs' demands, merely deferred consideration, and that that course of action was not wrongful. (*Id.*) In Response, Anders and Templin did not dispute that Brookdale purported to still be considering the demand; they argued, however, that Brookdale's statements and actions belied that assertion, amounting to a "functional refusal" of the demand. (Doc. No. 54 at 3.)

On September 7, 2022, the court filed a Memorandum and Order granting the defendants' motion in part and denying it in part. (Doc. Nos. 56–57.) The court noted, first, that it had technically erred when it permitted the plaintiffs to amend their Complaint pursuant to Rule 15(a) of the Federal Rules of Civil Procedure. Because the new allegations involved events that occurred after the filing of the original Complaint, the court should instead have required those facts to be pleaded not through an amendment pursuant to Rule 15(a), but supplementally pursuant to Rule 15(d), which exists specifically for that purpose. (Doc. No. 56 at 13.) The court chose to "rectify that error . . . by construing the Verified Consolidated Amended Stockholder Derivative Complaint to include both allegations and claims as of the date of the original filing and supplementally pleaded allegations and claims that arose later." (*Id.* at 14.)

As a result, the court explained, there were "two sets of largely identical, but differently timed, claims pending before the court": one set of claims "premised on the plaintiffs' alleged rights to sue derivatively" at the time the original respective Complaints were filed; and a "second set of claims" that was "substantively identical" to the first, but which "cannot be treated as having been filed contemporaneously with the other claims, because they are based on the plaintiffs' rights in light of later events." (*Id.* at 14.) The court then examined each set of claims in light of the existing caselaw regarding constructive refusal of litigation demands, concluding that the Board's initial deferral was not a constructive refusal, but that its second deferral was,

and that refusing the demand without performing any investigation was wrongful. (*Id.* at 20–26.) The court, therefore, dismissed "[a]ll claims premised on the plaintiffs' 'right to sue on behalf of Brookdale Senior Living Inc. prior to December 14, 2021," but permitted the supplementally pleaded claims to proceed. (Doc. No. 57 at 1.)

On January 13, 2023, the parties filed a Joint Motion that included, among other things, a request that the court dismiss Anders from the action and a request that Templin be permitted to file a Second Verified Amended Stockholder Derivative Complaint. (Doc. No. 80 at 2.) The court granted the motion, resulting in the filing of the new complaint. (Doc. No. 81; Doc. No. 82.) On February 17, 2023, the defendants and Brookdale, as nominal defendant, filed their Answers. (Doc. Nos. 83–84.)

On February 21, 2023, the defendants filed the pending Motion for Judgment on the Pleadings. (Doc. No. 85.) The defendants argue that the claims that the plaintiffs are asserting on behalf of Brookdale are each subject to a one-year statute of limitations under Tennessee law,[4] which began to run no later than the publication of the *Nashville Business Journal* article on April 30, 2020. (Doc. No. 86 at 1–2.)

Templin does not dispute the April 30, 2020 date of discovery, nor does she dispute that, if Tennessee law applies, then the one-year statute of limitations sets the correct baseline for considering these claims. She argues, however, that her claims on behalf of Brookdale should be governed by Delaware's three-year statute of limitations, because they involve the internal

---

[4] Pursuant to Tenn. Code Ann. § 48-18-601, "[a]ny action alleging breach of fiduciary duties by directors or officers . . . must be brought within one (1) year from the date of such breach or violation; provided, that in the event the alleged breach or violation is not discovered nor reasonably should have been discovered within the one-year period, the period of limitation shall be one (1) year from the date such was discovered or reasonably should have been discovered." *Id.*; *see Reid ex rel. First Horizon Nat. Corp. v. Baker*, No. 10-2413-STA, 2011 WL 976547, at *6 & n.29 (W.D. Tenn. Mar. 16, 2011) (holding that statute of limitations set out in Tenn. Code Ann. § 48-18-601 applies to all claims in which the gravamen of the claim is the breach of the officer or director's fiduciary duties).

7

affairs of a Delaware corporation. In the alternative, she argues that the claims are timely, even under Tennessee's shorter limitation period, because the events surrounding this litigation—particularly, the Board's blocking of derivative claims for the entirety of the window for filing—call for equitable relief from the statute of limitations, either through tolling or estoppel. (Doc. No. 88 at 2, 15.)

## II. LEGAL STANDARD

A motion for judgment on the pleadings under Rule 12(c) is governed by the same standards that govern a motion to dismiss for failure to state a claim under Rule 12(b)(6). *See Reilly v. Vadlamudi*, 680 F.3d 617, 622-23 (6th Cir. 2012). In deciding a motion to dismiss for failure to state a claim under Fed. R. Civ. P. 12(b)(6), the court will "construe the complaint in the light most favorable to the plaintiff, accept its allegations as true, and draw all reasonable inferences in favor of the plaintiff." *Directv, Inc. v. Treesh*, 487 F.3d 471, 476 (6th Cir. 2007); *Inge v. Rock Fin. Corp.*, 281 F.3d 613, 619 (6th Cir. 2002).

The Federal Rules of Civil Procedure require that a plaintiff provide "'a short and plain statement of the claim' that will give the defendant fair notice of what the plaintiff's claim is and the grounds upon which it rests." *Conley v. Gibson*, 355 U.S. 41, 47 (1957) (quoting Fed. R. Civ. P. 8(a)(2)). The complaint's allegations, however, "must be enough to raise a right to relief above the speculative level." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). To establish the "facial plausibility" required to "unlock the doors of discovery," the plaintiff cannot rely on "legal conclusions" or "[threadbare] recitals of the elements of a cause of action," but, instead, the plaintiff must plead "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

8

## III. ANALYSIS

### A. Choice of Law

As a general rule, when a federal court hears a diversity action, "the law of the forum state, including the choice-of-law rules, appl[ies]." *Montgomery v. Wyeth*, 580 F.3d 455, 459 (6th Cir. 2009) (citing *Uhl v. Komatsu Forklift Co.*, 512 F.3d 294, 302 (6th Cir. 2008)). Under Tennessee's ordinary choice-of-law principles, "statutes of limitations constitute procedural matters," meaning that the law of the forum state—here, Tennessee—typically governs. *SunTrust Bank v. Ritter*, No. E2017-01045-COA-R3-CV, 2018 WL 674000, at *4 (Tenn. Ct. App. Feb. 1, 2018); *see also Schwegman v. Howard*, No. M2001-00845-COA-R3CV, 2002 WL 31247084, at *3 (Tenn. Ct. App. Oct. 8, 2002) (citing *Cronin v. Howe*, 906 S.W.2d 910, 913 (Tenn. 1995)).

Templin, however, argues that the general principle that statutes of limitation are procedural should yield, in this instance, to a more specific Tennessee rule: the "internal affairs doctrine," which provides that "matters involving the internal affairs of a foreign corporation are deemed substantive in nature and 'should be resolved in accordance with the law of the state of incorporation.'"[5] *Hicks ex rel. Union Pac. Corp. v. Lewis*, 148 S.W.3d 80, 84 (Tenn. Ct. App. 2003) (quoting *Bayberry Assocs. v. Jones*, No. 87-261-II, 1988 WL 137181, at *4 (Tenn. Ct. App. Nov. 9, 1988)). The causes of action at issue here, Templin points out, are not simply ordinary claims based on some alleged injury to Brookdale perpetrated by an outside actor; they involve defendants from within Brookdale's own management structure, who are alleged to have failed in their execution of their formal duties. The statute of limitations, therefore, bears on internal corporate matters and should, Templin argues, be set by the state of incorporation. Doing

---

[5] "The General Assembly implicitly recognized the internal affairs doctrine in Tennessee Code Annotated § 48–25–105(c)," *id.* at 84, which states that Tennessee's laws governing corporations "do not authorize this state to regulate the organization or internal affairs of a foreign corporation authorized to transact business in this state." Tenn. Code Ann. § 48-25-105(c).

9

so would, among other things, allow the state of incorporation to determine how long individual corporate officers and directors will need to look over their shoulders in fear of potential litigation based on their controversial decisions.

The defendants respond that, whether or not there may be some speculative link between the statute of limitations and internal corporate dynamics as a practical matter, that link does not change the fact that, according to well-established Tennessee precedents, statutes of limitation are procedural as a matter of law. Although some Tennessee cases have suggested that a rule can be "deemed substantive" based on its connection to internal corporate affairs, *see, e.g., In re Healthways, Inc. Derivative Litig.*, No. M2009-02623-COA-R3CV, 2011 WL 882448, at *3 (Tenn. Ct. App. Mar. 14, 2011), a full reading of the caselaw cautions against reading too much into that language. It is not the case that, simply because issues of internal corporate affairs exist in a case, then all of the issues raised can be "deemed" substantive, regardless of their content. To the contrary, Tennessee courts have recognized that, even when the internal affairs doctrine governs the substantive aspects of a case, "the law of the forum state" continues to govern on "matters involving procedural law." *Sons of Confederate Veterans, Inc. v. Sweeney*, No. M2006-00116-COA-R3CV, 2007 WL 1135459, at *6 (Tenn. Ct. App. Apr. 16, 2007). The internal affairs doctrine, accordingly, is a supplement to, and clarification of, the substantive/procedural distinction; it does not grant a court permission to do away with the distinction altogether.

There does not appear to be a firm consensus, in American courts, regarding how the issue of timeliness should be considered in relation to the internal affairs doctrine. *See, e.g., Tong v. Dunn*, No. 11 CVS 1522, 2016 WL 3944092, at *4 (N.C. Super. July 8, 2016) ("The Court does not need to decide whether the internal-affairs doctrine should override the default rule that the limitations period of the forum state controls."). Some courts have suggested that applying

10

the limitations periods of the state of incorporation, as opposed to those of the forum state, is consistent with recognizing the charter-conferring state's "strong[] interest in applying its laws to fiduciary obligations of the corporate officers and directors of . . . a corporation organized under its laws." *Breeden v. Acheson*, 125 Haw. 243, 257 P.3d 1220 (Ct. App. 2011); *see also The Police Ret. Sys. of St. Louis v. Page*, 22 Cal. App. 5th 336, 340, 231 Cal. Rptr. 3d 417, 420–21 (2018) ("The parties agree that we must apply the law of the State of Delaware in analyzing the limitations issue here. Because only one state should have the authority to regulate the affairs of a corporation, the 'internal affairs doctrine' generally requires application of the law of the state of incorporation to any dispute regarding relations between the corporation and its shareholders or officers and directors."); *JLI Inv. S.A. v. Computershare Tr. Co., N.A.*, No. 15-CV-11474-ADB, 2017 WL 354008, at *6 (D. Mass. Jan. 23, 2017) (suggesting that the internal affairs doctrine applies to a statute of limitations). Other courts, however, have held that "the issue of [the] statute of limitations is a procedural issue, not a substantive issue for conflict of law purposes" and that the internal affairs doctrine is, therefore, "not applicable to determining the relevant statute of limitations." *Norman v. Elkin*, No. CIV.A. 06-005-JJF, 2007 WL 2822798, at *3 (D. Del. Sept. 26, 2007).

Because this issue poses a question of Tennessee law, this court is not called on to decide which of those two approaches is preferable in some abstract or absolute sense. Rather, because "no clause in the Constitution purports to confer . . . upon the federal courts" any "power to declare substantive rules of common law applicable in a state," *Erie Railroad Co. v. Tompkins*, 304 U.S. 64, 78 (1938), this court must "look to the final decisions of that state's highest court, and if there is no decision directly on point, then [it] must make" what is sometimes referred to as "an *Erie* guess"—that is, an informed prediction as to how the state's court of last resort, "if

11

presented with the issue, would resolve it." *In re Fair Fin. Co.*, 834 F.3d 651, 671 (6th Cir. 2016)

(quoting *Conlin v. Mortg. Elec. Registration Sys., Inc.*, 714 F.3d 355, 358–59 (6th Cir. 2013)).

Tennessee caselaw regarding the internal affairs doctrine is relatively sparse, and there
does not appear to be any Tennessee Supreme Court decision expressly setting out the
parameters of the doctrine in this state. One of the intermediate appellate court cases dealing with
the doctrine in greatest depth, however, was written by the current Chief Justice of the Tennessee
Supreme Court when she was a judge on the Tennessee Court of Appeals. *Hicks ex rel. Union
Pac. Corp. v. Lewis*, 148 S.W.3d 80 (Tenn. Ct. App. 2003) (Kirby, J.), involved the question of
whether Tennessee courts should apply Utah's version of the pre-suit demand requirement to a
stockholder derivative action involving a Utah corporation. *Id.* at 81–82. The Utah demand
requirement requires a party to take one step before taking another step, and it governs how a
claim can be brought, not the substance of the claim itself. Such features are usually thought of
as likely to render a rule procedural, rather than substantive. *See Willeford*, 597 S.W.3d at 475 &
n.5 (Kirby, J., concurring in part and dissenting in part). Nevertheless, the Court of Appeals
applied Utah law, "[i]n light of Tennessee's internal affairs doctrine, as well as other pertinent
caselaw holding that the pre-suit demand requirement is a matter of substance." *Hicks*, 148
S.W.3d at 85.

*Hicks* offers some support to each side of this disagreement. On one hand, *Hicks* suggests
that the superficially procedural-seeming aspects of a rule do not necessarily preclude it from
being "substantive" when considered in the context of the internal affairs doctrine. On the other
hand, however, the court relied on caselaw specifically treating the demand requirement as
substantive—and there is no such caselaw with regard to statutes of limitation. Indeed, the
caselaw seems to suggest that statutes of limitation are, broadly speaking, not substantive.

12

Nothing about *Hicks* suggests that a rule that is already well-settled to be procedural will be transformed into a substantive rule simply because the case at hand involves an intracorporate dispute. The first step continues to be to consider whether the law at hand is substantive or procedural, with the internal affairs doctrine only coming into play as needed.

In drawing the distinction between substantive and procedural rules in the choice of law context, the court typically focuses on whether the law at issue "creates, defines, and regulates the rights, duties, and powers of parties" or whether it, in contrast, merely "prescribe[s] the steps for having a right or duty judicially enforced." *Whitley v. Metro. Nashville Bd. of Educ.*, No. M202201079COAR3CV, 2023 WL 4131459, at *5 (Tenn. Ct. App. June 22, 2023). In light of that standard, it is clear why the internal affairs doctrine might be particularly necessary to the consideration of the demand requirement. On one hand, the requirement is clearly a rule prescribing steps necessary to have a right judicially enforced, suggesting it might be procedural. At the same time, however, the demand requirement directly affects—and augments—the apportionment of rights within a corporation, placing the power to manage an aspect of corporate affairs—the bringing of a lawsuit—in one set of hands rather than another's. The requirement, in other words, has aspects that can be characterized as substantive and others that can be characterized as procedural. The internal affairs doctrine, however, ensures that the rule will be deemed substantive, because it directly bears on the two topics most central to that doctrine: (1) how a corporation is organized; and (2) how its affairs are directed. *See* Tenn. Code Ann. § 48-25-105(c).

A statute of limitations, in contrast, has no such substantive component rewriting the apportionment of authority within a corporation. The statute of limitations says nothing about how the internal corporate decision to bring a lawsuit should be performed or who has the

13

ultimate control over that decision. Indeed, the statute of limitations does not directly touch on corporate decision-making or structure at all; it merely tells the court whether a claim is too old to be filed. The court, accordingly, concludes that the Tennessee Supreme Court would, more likely than not, hold that the internal affairs doctrine does not dictate the statute of limitations applicable to stockholder derivative suits against directors. Tennessee's one-year statute of limitations applies.

## B. Application of the One-Year Statute of Limitations

The Sixth Circuit has recognized that, "[i]n general, a motion for judgment on the pleadings 'is an inappropriate vehicle for dismissing a claim based upon a statute of limitations.'" *Baker v. Bryant & Stratton Coll.*, No. 18-3082, 2018 WL 7132241, at *1 (6th Cir. Aug. 31, 2018). The Federal Rules of Civil Procedure classify noncompliance with a statute of limitations as an affirmative defense, *see* Fed. R. Civ. P. 8(c), meaning that the plaintiff is typically not required to address the issue in his pleaded facts. *See Whitehead v. Sterling Jewelers, Inc.*, 648 F. Supp. 3d 951, 957 (W.D. Tenn. 2023) (citing *Cataldo v. U.S. Steel Corp.*, 676 F.3d 542, 547 (6th Cir. 2012)). The defendant's answer will ordinarily raise the defense, but the pleading standards applicable to affirmative defenses are relatively undemanding. *See* Fed. R. Civ. P 8(c); *Operating Engineers Loc. 324 Health Care Plan v. G & W Const. Co.*, 783 F.3d 1045, 1050 (6th Cir. 2015). The likelihood that a court can adequately assess such a defense at the pleading stage is, therefore, low. In recognition of that fact, federal courts typically take the position that "[s]tatute-of-limitations defenses are [more] properly raised in Rule 56 motions" for summary judgment. *Munson Hardisty, LLC v. Legacy Pointe Apartments*, LLC, 359 F. Supp. 3d 546, 567 (E.D. Tenn. 2019) (quoting *Paulin v. Kroger Ltd. P'ship I*, No. 3:14-cv-669, 2015 WL 1298583, at *4 (W.D. Ky. Mar. 23, 2015)).

14

That does not mean that the court can disregard the defendants' argument. It is well-settled that, if it is "'apparent from the face of the complaint that the time limit for bringing the claim[s] has passed,'" then the plaintiff, if he wishes to avoid dismissal, has an "obligation to plead facts in avoidance of the statute of limitations defense." *Bishop v. Lucent Techs., Inc.*, 520 F.3d 516, 520 (6th Cir. 2008) (quoting *Hoover v. Langston Equip. Assocs., Inc.*, 958 F.2d 742, 744 (6th Cir. 1992)). It is clear from the Second Amended Verified Stockholder Derivative Complaint that Templin filed these claims more than one year after they would ordinarily have accrued. (*See, e.g.*, Doc. No. 82 ¶ 99 (discussing public revelation of Brookdale's problems).) Templin, therefore, did not have the luxury of wholly ignoring issues of timeliness in her pleading.

The current procedural setting, however, does limit the court's inquiry. The court is not called on to decide, definitively, that the claims that Templin has raised necessarily are or are not subject to a statute of limitations defense with regard to any particular defendant. Rather, the court's role, at this stage, is to determine whether the applicability of such a defense is so clearly established by the pleadings that there is no need to allow the parties to explore the surrounding facts any further.

Templin argues, however, that the factual context of her filing is incredibly important, because her delay was no ordinary delay. Rather, Brookdale's Board, which included several of the defendants, effectively forced her to delay by refusing to act on her litigation demand. Those events, she argues, should equitably prevent the defendants from benefiting from that delay. Without such equitable relief, a corporate board could block any proposed stockholder derivative suit by sitting on the demand for a year.

15

Evaluating this argument requires the court to navigate a somewhat confusing issue of terminology. Templin discusses her argument, in significant part, in the connection with "equitable tolling," a catch-all doctrine that, where recognized, permits a plaintiff to toll the statute of limitations by showing "(1) that he has been pursuing his rights diligently, and (2) that some extraordinary circumstance stood in his way and prevented timely filing." *Lawrence v. Florida*, 549 U.S. 327, 336 (2007) (quoting *Pace v. DiGuglielmo*, 544 U.S. 408, 418 (2005)); *see, e.g.*, *Lyons v. Metro. Gov't of Nashville & Davidson Cnty.*, 416 F. App'x 483, 492 (6th Cir. 2011). "[U]nlike other state courts and the federal courts," however, Tennessee courts "have declined to recognize the doctrine of equitable tolling in civil cases." *See Redwing v. Cath. Bishop for Diocese of Memphis*, 363 S.W.3d 436, 460 (Tenn. 2012) (citing *Fahrner v. SW Mfg., Inc.*, 48 S.W.3d at 145 n. 2; *Norton v. Everhart*, 895 S.W.2d 317, 321 (Tenn. 1995)). "[C]laims arising under state law are governed by state tolling doctrine." *Roberson v. Macnicol*, 698 F. App'x 248, 250 (6th Cir. 2017) (citing *eRagan v. Merchs. Transfer & Warehouse Co.*, 337 U.S. 530, 533, 69 S.Ct. 1233, 93 L.Ed. 1520 (1949); *Tapia-Martinez v. Gonzales*, 482 F.3d 417, 423 n.6 (6th Cir. 2007).Templin's references to the general doctrine of equitable tolling are, therefore, out of step with the fact that it is the Tennessee statute of limitations from which Templin needs relief.

The court's inquiry, however, does not end there, because, as the Tennessee Supreme Court has made clear, the fact that Tennessee law recognizes no singular, umbrella doctrine of "equitable tolling" does not mean that the state has wholly abandoned the possibility that equitable principles will ever provide relief from a statute of limitations. To the contrary, considerations of equity remain alive and well in Tennessee's caselaw involving statutes of limitation. *See, e.g., id.* (discussing equitable estoppel). The Tennessee Supreme Court's

16

rejection of equitable tolling as a general framework simply means that, if a plaintiff seeks to rely on equitable considerations to defeat a statute of limitations, she must do so in connection with a more specific, established equitable doctrine—not a broad reliance on "extraordinary circumstances." Templin's briefing, moreover, does identify one such more specific doctrine that is potentially applicable here: equitable estoppel. (Doc. No. 88 at 15.)

"The doctrine of equitable estoppel arises from the equitable maxim that no person may take advantage of his or her own wrong." *Barrett v. Garton*, No. M2022-01064-COA-R3-CV, 2023 WL 6533291, at *3 (Tenn. Ct. App. Oct. 6, 2023) (quoting *Redwing*, 363 S.W.3d at 460). As applied to the issue of the timely filing of a suit, equitable estoppel prevents a defendant from escaping liability "when the defendant has misled the plaintiff into failing to file suit within the statutory limitations period." *Redwing*, 363 S.W.3d at 460. The defendants do not dispute that Tennessee law recognizes the applicability of equitable estoppel to statutes of limitation defenses. Rather, the defendants argue that, while such an argument may be available in some cases, it does not apply here.

In order to invoke the doctrine of equitable estoppel to defeat a statute of limitations defense, the plaintiff must show that the defendant "induced him or her to put off filing suit by identifying specific promises, inducements, suggestions, representations, assurances, or other similar conduct by the defendant that the defendant knew, or reasonably should have known, would induce the plaintiff to delay filing suit." *Id.* at 461. "The focus of an equitable estoppel inquiry 'is on the defendant's conduct and the reasonableness of the plaintiff's reliance on that conduct.'" *Id.* (quoting *Hardcastle v. Harris*, 170 S.W.3d 67, 85 (Tenn. Ct. App. 2004)). Typically, the court will only apply the doctrine if "(1) 'the defendant lulled [the plaintiffs] into putting off filing . . . suit by conduct, suggestions, or assurances that the defendant knew or

17

should have known would induce the plaintiff to delay filing suit,' (2) '[the plaintiffs'] delay in filing suit was not attributable to their own lack of diligence," and (3) "the delay was not unreasonably prolonged." *Barrett*, 2023 WL 6533291, at *3 (quoting *Hardcastle*, 170 S.W.3d at 85).

Equitable estoppel applies only rarely, in part because there simply are not many situations in which a defendant could plausibly be argued to have manipulated the plaintiff into filing too late. *See, e.g.*, *Mott v. Luethke*, 633 S.W.3d 585, 597 (Tenn. Ct. App. 2021) ("We note that in the context of the statute of limitations, the doctrine of equitable estoppel is not favored under Tennessee law."). The unique features of stockholder derivative actions against officers and directors, however, permit defendants to take an unusually central role in determining the timing of litigation. The core question at the heart of whether a defendant should be equitably estopped from asserting the statute of limitations is "whether the defendant's conduct is sufficiently unfair or misleading to outweigh the public policy favoring statutes of limitations." *Barrett*, 2023 WL 6533291, at *3 (quoting *Hardcastle*, 170 S.W.3d at 85). Templin has something that few plaintiffs can boast in that regard: clear documentary evidence of the defendants directly impeding the timely filing of her lawsuit. Indeed, it was not long ago that the defendants themselves were actively arguing to this court that their assurances *should* have led Templin to delay filing derivative claims and that Templin was, in fact, in the wrong for not delaying further. The nexus between the defendants' actions and the timing of this lawsuit, accordingly, is extraordinarily strong.

There is, moreover, a plausible basis for concluding that the Board's assurances were a knowingly deceptive attempt to allow the claims to expire before they could be preserved. The court has already noted the Board's suspiciously shifting rationales for refusing to pursue the

18

litigation, as well as the manifest implausibility of the rationale that the Board gave after its initial rationale collapsed. (Doc. No. 56 at 22–25.) In March of 2021, when there was still time to file, the Board specifically told Templin that it had elected to "defer consideration" of litigation because performing an investigation "while the *Posey* case [was] pending . . . could prejudice the Company's defense." (Doc. No. 82-2 at 2.) If the Board had told Templin what now seems potentially to have been the truth—that it had no intention of investigating the demand, regardless of what happened with the *Posey* litigation—then Templin could have taken that refusal in hand and filed a timely stockholder derivative action on that very day. Instead, the company gave her an answer that a reasonable finder of fact could conclude was a pretextual attempt to force her—and Brookdale—into a fatal delay.

The defendants complain that it would be inappropriate to permit equitable estoppel based on the Board's delayed consideration of Templin's litigation demand, because the court "has already held that it was a valid exercise of business judgment for the Board to defer action on the Templin Demand while the [*Posey*] Action was pending." (Doc. No. 89 at 3.) The ruling that the defendants are citing, however, was significantly narrower than they suggest. The question presented at that time was whether the plaintiffs were entitled to disregard the Board's express characterization of its initial decision as a deferral and to sue on the ground that their demands had, contrary to that characterization, been (wrongly) denied. The court held that, "[a]t that early point[,] there was simply too much of a colorable basis for delay for the court to" disregard Brookdale's stated rationale. (*Id.* at 20.) The court, however, made no factual finding that Brookdale's stated reasoning for the delay accurately reflected the motivation of any individual director or officer; nor did the court make any legal holding that the defendants were entitled to be entirely free of legal consequences for the company's delay. The court held only

that, as of May 2021, there had been no constructive denial, because the facts on the ground were not yet sufficient to permit Anders or Templin to treat the delay as the charade that they believed it to be. (*Id.*) Constructive denial, rather, occurred later, when the deferral was announced a second time, with less support. (*Id.* at 23.)

The issue presented now, in contrast, is not about how the Board's actions should have been construed on any particular date. The question before the court now is this: Has Templin asserted facts that could plausibly support a conclusion that the defendants, acting through Brookdale, unfairly induced her to file her claims outside the statute of limitations? The court holds that she has done so, and nothing about that holding contradicts the court's earlier ruling regarding when constructive refusal arose. If anything, this holding is simply the falling of the second shoe. The court's first holding recognized the Board's legitimate power to delay a decision; now, this ruling explores whether the defendants should be permitted to benefit from that delay. And a delay caused by the defendants that rendered a claim untimely is exactly what equitable estoppel exists to address.[6]

No other factor precludes the potential assertion of equitable estoppel. Templin was diligent, and her delay was not unreasonably prolonged. In fact, as the court has already held, Templin originally filed Brookdale's claims too early, while the Board's blockade of inaction still prevented her from doing so. The pleadings also permit the plausible conclusion that

---

[6] Indeed, the natural fit of equitable estoppel to this situation is highlighted by the poor fit of any other doctrine to address the serious problem that these alleged facts demonstrate. The demand requirement, combined with Tennessee's short statute of limitations for suits against officers and directors, creates an obvious risk that potential director defendants might manipulate the relevant corporate board to delay action until the claims being proposed are untimely. If a plaintiff cannot rely on equitable estoppel in such a situation, then, what recourse is there? Templin argues, in the alternative, that a litigation demand itself should be held to "preserve" the claims proposed, but, as the defendants point out, there is not actually any legal support for such a rule. Equitable estoppel, therefore, appears to be the last and potentially only line of defense if a corporate board stonewalls with enough facial plausibility to avoid a finding of constructive denial until after a claim is untimely.

20

Templin's late filing date was, in fact, induced by the Board's actions. The defendants suggest that the Board's delay could not have influenced Templin's timing, because she, by her own account, was unconvinced that the delay was genuine. The claims that Templin filed based on that initial suspicion, however, have already been dismissed. What remains are claims whose timing was unambiguously a result of the Board's delay, because they were filed, supplementally, only after the Board's delay became sufficiently questionable to permit Templin to proceed. The record, therefore, strongly supports the inference that the timing of the filing of those claims was, in fact, directly induced by the Board.

There may be questions regarding the degree to which the equitable estoppel argument can be applied to claims against particular individual defendants, given that the relevant communications were made on behalf of Brookdale itself. "The doctrine of equitable estoppel applies only when the defendant engages in misconduct," *Redwing*, 363 S.W.3d at 460, and some or all of the individual defendants may be blameless in the Board's delay. The defendants, however, have not raised any such individualized arguments, and, even if they had, it is unlikely that this would be the appropriate time for making such distinctions. "A court may grant judgment on the pleadings on a statute of limitations defense only where it is apparent from the face of the complaint" that the defense will succeed. *Brown v. United States Dep't of Treasury, Internal Revenue Serv.*, No. 2:14-CV-1142, 2015 WL 4511426, at *2 (S.D. Ohio June 17, 2015) (quoting *Hughes v. Donini*, No. 1:13CV569, 2014 WL 6453612, at *2 (S.D. Ohio Nov. 17, 2014)). Neither the Complaint nor the Answer, however, provides facts sufficient for the court to parse out defendants' individual roles, if any, in inducing Templin's delay. All that the court can do, at this juncture, is evaluate the pleaded facts, and those facts do not preclude the possibility that Templin will successfully establish that some or all of the defendants will be equitably

21

estopped from asserting a statute of limitations defense. The court, therefore, cannot award the defendants judgment on the pleadings.

## IV. CONCLUSION

For the foregoing reasons, the defendants' Motion for Judgment on the Pleadings (Doc. No. 85) will be denied.

An appropriate order will enter.

_____
ALETA A. TRAUGER
United States District Judge